[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 28, 2008
THOMAS K. KAHN
CLERK

No. 07-12476
Non-Argument Calendar

_____

BIA Nos. A96-282-134 & A96-282-135

VASILIY BAHTINE,
MARIA VASYLIEVNA DRUCHKIV,
CHRISTINA BAHTINA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 28, 2008)**

Before TJOFLAT, BLACK and HULL, Circuit Judges.

PER CURIAM:

Vasiliy Bahtine, his wife, Maria Vasylievna Druchkiv, and their daughter, Christina Bahtina, (collectively "petitioners"), natives and citizens of Ukraine, petition for review of a final order by the Board of Immigration Appeals ("BIA") affirming without opinion the final removal order from the Immigration Judge ("IJ") denying petitioners' claims for asylum under the Immigration and Nationality Act ("INA"). After review, we deny in part and dismiss in part the petition for review.

## I. BACKGROUND

In November 2002, petitioners applied for asylum, claiming that Bahtine suffered past persecution and feared future persecution by the Ukrainian police, the Security Service of Ukraine ("SBU"), and the Ukrainian prosecutor's office based on his nationality, political opinion, and membership in a particular social group – the Rukh political opposition party.[1]

Before the IJ, Bahtine testified as follows. From approximately March 1999 to April 2002, Bahtine, as a member of Rukh, participated in criticism of and protests and demonstrations against the dictatorship of then Ukrainian President

---

[1] In this appeal, we discuss only petitioners' asylum claims. The IJ also denied petitioners withholding of removal under the INA and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). However, petitioners have abandoned any challenge to these claims on appeal because they only mention them in passing in their brief on appeal and, thus, we decline to address them. Bayro v. Reno, 142 F.3d 1377, 1379 (11th Cir. 1998).

Leonid Kuchma. As a result of his Rukh membership and activities and his rejection of SBU Captain Ignat Klimenko's offer to become an informant for the police on the Rukh, Bahtine claimed that his apartment was searched and he was threatened, beaten, interrogated, and arrested four times. Specifically, Bahtine cited an April 28, 2002 unsanctioned Rukh protest where fighting broke out between the police and demonstrators. Bahtine hit a policeman in the back with a stone after Bahtine witnessed the policeman hit an elderly man with a club in the head. Bahtine alleged that a group of policemen then surrounded him and beat him with their clubs and boots until he lost consciousness. Bahtine was taken to the police station, interrogated, and threatened with five years of jail time. The police then took Bahtine to the hospital, but Bahtine escaped the hospital after three or four hours and hid at a friend's house. He eventually escaped to Poland, flew to Mexico, and illegally entered the United States in Texas without a visa.

After Bahtine testified at his removal hearing, the IJ made an adverse credibility finding and denied the petitioners asylum.[2] The IJ also denied Bahtine voluntary departure as a matter of discretion, but granted voluntary departure for

---

[2]The IJ alternatively denied Bahtine asylum on the grounds that (1) the mistreatment he suffered did not rise to the level of persecution, (2) he had not been singled out by police, and (3) he had not shown an objective fear of future persecution because President Kuchma was no longer in power. Because we deny the petition for review as to the asylum claim based on the IJ's adverse credibility finding, we do not address these alternative conclusions.

Druchkiv and Bahtina. The BIA affirmed the IJ's decision without opinion. The petitioners filed a petition for review challenging the denial of asylum and the denial of voluntary departure to Bahtine.

## II. DISCUSSION

Because the BIA affirmed the IJ's decision without opinion, we review the IJ's decision. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). "The IJ's factual determinations, including credibility determinations, are reviewed under a substantial evidence standard, which provides that the IJ's decision can be reversed only if the evidence compels a reasonable fact finder to find otherwise." Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1230-31 (11th Cir. 2006) (quotation marks omitted).

### A. Asylum

"The asylum applicant must establish eligibility for asylum by offering credible, direct, and specific evidence in the record." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (quotation marks omitted). "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006) "[A]n adverse credibility determination alone may be sufficient to support the denial of an asylum application." Forgue,

4

401 F.3d at 1287. "[T]he IJ must offer specific, cogent reasons for an adverse credibility finding." Id. "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence." Id. (quotation marks omitted).

Here, the IJ made an explicit adverse credibility finding as to Bahtine and gave specific, cogent reasons for it. The IJ relied upon several inconsistencies in Bahtine's testimony, a specific medical record, and Bahtine's asylum interview. For example, the IJ noted that the medical report Bahtine submitted to corroborate his story–that he was beaten, arrested, and taken to the hospital as a result of the April 2002 demonstration–in fact contradicted his testimony. Bahtine testified that he was at the hospital for three or four hours before escaping. However, the medical report stated that Bahtine entered as a patient on April 28, 2002 and was released on May 25, 2002. Bahtine's only explanation for this discrepancy was that the hospital told his friend, who obtained the report, that May 25, 2002 was the date the hospital closed Bahtine's case. But this does not explain why the report lists May 25 as the date Bahtine was "released" as a patient.

In addition, the IJ noted at the removal hearing that the medical report indicates "there were many examinations p[er]formed, things that I would assume

5

lasted a lot longer than the time you were there." Indeed, the report lists that Bahtine was examined by a surgeon, an "ENT" (ears, nose and throat doctor), and an "oculist" (presumably an ophthalmologist or an optometrist), that a series of examinations were performed, and that two prescriptions were recommended. After the IJ questioned Bahtine's testimony that he escaped after three or four hours in light of the report's list of examinations performed, Bahtine did not offer any explanation to alleviate the IJ's concerns. Furthermore, in his appellate brief, Bahtine wholly fails to address the IJ's concerns with the medical report.

The IJ also cited inconsistencies between Bahtine's removal hearing testimony and his asylum interview and Bahtine's failure to be forthright with the asylum officer.[3] The IJ noted that in the asylum interview, Bahtine initially twice denied having ever visited prior to October 7, 2002 or having been arrested in the United States, even after the asylum officer indicated that there was evidence showing otherwise. After further questioning, Bahtine eventually admitted to the asylum officer that he was arrested in a supermarket for theft, which he also admitted during his removal hearing testimony. Bahtine also later admitted to the asylum officer that he had been to the United States three times total, with the previous trips occurring in 1991 and 1999. At the removal hearing, however,

---

[3]A certified interpreter was at the asylum interview.

Bahtine testified that he had been to the United States <u>four</u> times total, with prior visits in 1991, 1995 and 1999.

Bahtine also claims that his inconsistencies were minor and will not support an adverse credibility finding.[4] Some circuits have concluded that inconsistencies used to discredit an asylum-seeker's testimony must go to the heart of the asylum claim. <u>See</u> <u>Gao v. Ashcroft</u>, 299 F.3d 266, 272 (3d Cir. 2002); <u>Chebchoub v. I.N.S.</u>, 257 F.3d 1038, 1043 (9th Cir. 2001). This Court has not addressed the issue in a published opinion.[5] We need not resolve the issue, however, because the inconsistencies identified by the IJ between Bahtine's testimony about the April 2002 persecution incident and the medical report regarding his April 2002 hospital stay directly relate to the petitioners' claims of persecution beatings and thus are sufficient under either standard.[6]

---

[4]The IJ stated that the testimony regarding Bahtine's prior entries and arrest in the United States was not material to his asylum-persecution claim but that they show a pattern and practice of not being forthright.

[5]The REAL ID Act of 2005 amended the Immigration and Nationality Act to permit adverse credibility determinations based on inconsistencies regardless of whether those inconsistencies go to the heart of the asylum applicant's claim. <u>See</u> Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 231, 303 (2005) (codified at 8 U.S.C. § 1158(b)(i)(B)(iii)). However, because the petitioners' asylum application was filed prior to the enactment of the REAL ID Act on May 11, 2005, this amendment does not apply to petitioners' claim. <u>See</u> <u>id.</u> § 101(h)(2), 119 Stat. at 305.

[6]The IJ also noted two inconsistencies in Bahtine's removal hearing testimony and his interview with the asylum officer regarding the dates of his arrests in the Ukraine and the duration of his detentions. Upon review of the record, we conclude that Bahtine's testimony in this respect was essentially consistent.

Based upon the foregoing, the IJ presented specific, cogent reasons in support of its adverse credibility finding that were supported by substantial evidence in the record. Thus, we deny the petition for review to the extent that it challenges the denial of asylum.[7]

**B.     Voluntary Departure**

Bahtine also challenges the IJ's discretionary decision denying him voluntary departure. This Court lacks jurisdiction to review certain discretionary decisions, including judgments regarding the granting of voluntary departure relief. 8 U.S.C. §§ 1229c(f), 1252(a)(2)(B)(i). Although the REAL ID Act of 2005 provided an exception that allows this Court to retain jurisdiction if a petition for review involves "constitutional claims or questions of law," Pub. L. No. 109-13, § 106(a), 119 Stat. 231, 310 (codified at 8 U.S.C. § 1252(a)(2)(D)), "discretionary or factual determinations continue to fall outside the jurisdiction of the court of appeals entertaining a petition for review," Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005) (quotation marks omitted). Accordingly, because the IJ denied Bahtine's request for voluntary departure as a

---

[7]We also reject petitioners' claim that the IJ denied him a de novo hearing by relying on Bahtine's interview with the asylum officer to deny their asylum application because Bahtine admitted all of his prior entries and prior arrest in the United States at the removal hearing.

matter of discretion, this Court lacks jurisdiction to review the IJ's decision, and thus we dismiss the petition for review as to this issue.

**PETITION DISMISSED IN PART and DENIED IN PART.**